UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal No. 2:02 CR 44(6) AS |
| ) | |
| WILEY JOHNSON, ) | |
| ) | |
| Defendant. ) | |
| ****************************************** ) | |
| WILEY JOHNSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil No. 2:08 CV 250 AS |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM OPINION AND ORDER**

The Court takes full judicial notice of the extensive record in this case, including four trips to the Court of Appeals. Defendant/Petitioner Wiley Johnson was convicted by a jury of distributing crack cocaine and conspiring to distribute more than 50 grams of crack cocaine, 21 U.S.C. §§ 841 and 846, in this Court on August 4, 2003. On November 6, 2003, Mr. Johnson was sentenced to 360 months' imprisonment and 5 years of supervised release.[1] On April 5, 2005, the Seventh Circuit affirmed the conviction finding that sufficient evidence supported his conviction, but directed a limited *Paladino* remand. *U.S. v. Johnson*, 127 Fed.Appx. 894 (7th Cir. 2005).

On July 1, 2005, Mr. Johnson was re-sentenced based on *Paladino*, and was given 200

---

[1] The Court employed an offense level of 40 and a criminal history category of III (in light of Mr. Johnson's having 5 criminal history points), which provided a Guideline range of 360 months to life imprisonment.

months' imprisonment and the same supervised release requirements as before. Mr. Johnson's criminal history category remained unchanged, but the sentence was reduced because this Court lowered Mr. Johnson's base offense level in light of the jury's finding, at the time of the original verdict, that Mr. Johnson was responsible for the distribution of more than 50 grams of cocaine, not the 1.5 kilograms for which he was previously sentenced. On September 8, 2006, the Seventh Circuit affirmed the application of a sentencing enhancement for the use of a dangerous weapon, but vacated the sentence and ordered this Court to "determine the amount of cocaine attributable to each defendant under the counts of conviction and the defendants' relevant conduct . . .[by] evaluat[ing] the evidence submitted by both sides and mak[ing] appropriate findings of fact as to the quantity of cocaine for which each defendant is responsible . . .," then calculate the appropriate advisory Guidelines range and determine whether the factors set forth in 18 U.S.C. § 3553(a) required any adjustment in order to make the sentence reasonable. *U.S. v. Johnson*, 193 Fed.Appx. 630 (7th Cir. 2006).

On January 11, 2007, Mr. Johnson was sentenced for a third time. Applying an unchanged criminal history point total of 5 (category III), but a changed offense level of 40, which created a sentencing range of 360 months to life, he was given 360 months' imprisonment and 5 years of supervised release. The sentence of 360 months was imposed despite objection by Mr. Johnson's attorney regarding the inclusion of relevant conduct to determine the amount of narcotics involved, and his objection to the presentence report which recommended that 1.5 kilograms of crack cocaine be attributed to Mr. Johnson. Specifically, this Court extensively discussed the amount of cocaine attributed to Mr. Johnson, by stating as follows:

Here, the Court must make a finding of fact as to the amount of crack cocaine attributable to this Defendant . . .

In making this inquiry, the Court must determine the scope of the criminal activity the Defendant agreed to jointly undertake. The Court may consider the Defendant's explicit and/or implicit agreements fairly inferred from conduct of the Defendant an others. Thus, the Defendant is accountable for all quantities of contraband with which he was directly involved as well as all reasonably foreseeable quantities of contraband which were within the scope of the criminal activity that he jointly undertook. See U.S.S.G. § 1B1.3.

The Defendant stated that he "did not live in Gary, Indiana, during the entire amount of time of the conspiracy and should not be held accountable to any amount calculated in paragraph 22, for the time frame that he did not live there." Presentence Report at 16. He also stated that "trial testimony of actual sales should be used to calculate the amount of crack cocaine sold. 'According to the Government' is not sufficient to support a drug quantity finding." *Id.*; *citing U.S. v. Palmer*, 248 F.3d 569 (7th Cir. 2001).

The Defendant was convicted of participating in a large-scale, long-term conspiracy ["the CCA drug conspiracy"] to distribute crack cocaine in Gary, Indiana. The evidence presented at trial proved that the Defendant was a member of a street gang that essentially and exclusively controlled the drug trafficking in a public housing development in Gary. He participated not only in the sale of drugs but also provided surveillance and security so that his co-conspirators could sell drugs. Evidence presented at trial also established that the Defendant was a key member of this conspiracy.

The goal of the CCA drug conspiracy was to distribute large amounts of crack cocaine in Gary, Indiana. The government's evidence established that, because of the success of the conspiracy, far more than 1.5 kilograms of crack cocaine was distributed during the course of the conspiracy. Members of this conspiracy distributed far more than 1.5 kilograms of crack cocaine from 1994 to 2001, primarily in the area of 17th and Clinton [also known as "the hill"] and on 19th Place, a street controlled by the gang. Specifically, the evidence at trial established that the conspirators–including Defendant Johnson–sold multi-gram quantities of crack cocaine on "the hill" and on 19th Place every day for several years. The Seventh Circuit stated:  A police officer made an undercover purchase from

> Mr. Johnson on "the hill" in 1997. According to testimony, Mr. Johnson took turns, was "fronted" drugs, and was a lookout and was selling on "the hill" at various times between 1995 and 1999. Various witnesses testified that Mr. Johnson smoked crack and that he sold drugs to support his habit. A police officer testified that he arrested Mr. Johnson in 1995 in another area of Concord after he observed drug sales taking place out of a vehicle in which Mr. Johnson and others (including Mr. George) were found. The officer found crack in the vehicle. Additionally, an officer found crack on Mr. Johnson in October 2001 in another area of Concord. *United States v. Johnson*, 127 Fed.Appx. 894, 898 (7th Cir. 2005).
>
> Michael Carter, William Carter, Troy Miller, Kenneth Lewis, and Daniel Allison testified that the Defendants sold drugs on "the hill" and on 19th Place for several years. There is evidence establishing that co-conspirator Malone individually distributed more than 1.5 kilograms of crack during the relevant time period; this conduct was reasonably foreseeable to the Defendant. The Court finds that the length of the conspiracy and the extent of Defendant's involvement therein are sufficient to find, as a member of the conspiracy, that he is accountable for distributing in excess of 1.5 kilograms of crack cocaine. *See United States v. Vega-Montano*, 341 F.3d 615, 618 (7th Cir. 2003) (each participant in a drug conspiracy is responsible for all drug transactions reasonably foreseeable to him, and all conduct by any co-conspirators in furtherance of, and reasonably foreseeable in connection with, the conspiracy is attributable to defendant as relevant conduct at sentencing). This Court recognizes that the jury only found that the conspiracy involved more than 50 grams of crack cocaine. Nevertheless, based on relevant conduct established in the record, this Court finds that the amount of narcotics attributable to the Defendant is more than 1.5 kilograms of crack cocaine. This conduct calls for a base offense level of thirty-eight (38).

*See*, Jan. 11, 2007 Sentencing Memorandum, Doc. No. 392, pp. 5, 7-10 (footnote omitted).

Again, Mr. Johnson appealed the sentence. On July 18, 2007, the Seventh Circuit affirmed the sentence and held that "the [district] court discussed the § 3553(a) factors at length, and made it clear that it considered the sentence to be the appropriate one in light of those factors . . .[and] the court properly understood its role, and that it believed that after considering the § 3553(a) factors,

the circumstances did not warrant a sentence lower than the Guidelines range. *See U.S. v. Johnson*, 241 Fed.Appx. 334 (7th Cir. 2007).

Subsequently, on February 17, 2008, Mr. Johnson petitioned for a reduction of his sentence under 18 U.S.C. § 3582(c)(2) based on a Guideline sentencing range that was subsequently lowered and made retroactive by the United States Sentencing Commission pursuant to 28 U.S.C. § 994(u). The Court, applying an offense level of 38 and a criminal history category of III (producing a sentencing range of 292-365 months), imposed a sentence of 292 months' imprisonment on April 8, 2008. No additional fact finding was employed.

On May 29, 2008, Mr. Johnson filed another notice of appeal; however, the appeal was dismissed on August 22, 2008, for failure to timely pay the required fees.

On September 2, 2008, Mr. Johnson filed a motion pursuant to Title 28, United States Code, Section 2255 (Doc. No. 517), to which the government responded (Doc. No. 548),[2] and the Court now considers. Mr. Johnson alleges that his counsel, Matthew Soliday, rendered ineffective assistance of counsel based on the following: (1) failing to object at sentencing to the district court's failure to make independent findings as to the drug amount; (2) failing to object at sentencing so the district court would consider a lower drug quantity; (3) failing to "properly" object at trial to the Lab Technician's trial testimony concerning the drug-type (or chemical make-up of the substance); and (4) failing to object at sentencing to the presentence report's inclusion of pending criminal charges which were dismissed.

---

[2] No issue was raised as to the timing of Mr. Johnson's 28 U.S.C. § 2255 petition under paragraph (f) of the statute, setting forth a 1 year period of limitation. *See* 28 U.S.C. § 2255(f). Further, the statement that Mr. Johnson's § 2255 petition should be dismissed as an unauthorized second or successive petition, without identifying the prior petition, is unsupported. *See* Doc. No. 548, p. 10.

Section 2255 of Title 28 U.S.C. allows collateral relief for (1) imposition of a sentence in violation of the Constitution or federal law; (2) lack of jurisdiction of the sentencing court; (3) imposition of a sentence in excess of the statutory maximum; or (4) imposition of a sentence otherwise subject to collateral attack. *Patel v. United States,* 106 F.3d 403 (7th Cir. 1997). A prisoner is entitled to relief under Section 2255 for a sentence imposed in violation of federal law if that sentence involved a "fundamental defect" causing a "complete miscarriage of justice" or otherwise resulting in a violation of due process. *Id.* (citing *United States v. Timmreck*, 441 U.S. 780, 783-784 (1979)).

However, a § 2255 motion is "neither a recapitulation of nor a substitute for a direct appeal." *Varela v. United States,* 481 F.3d 932, 935 (7th Cir. 2007) (citing *Belford v. United States*, 975 F.2d 310, 313 (7th Cir.1992) (*overruled on other grounds*)). Issues that were raised on direct appeal may not be reconsidered on a § 2255 motion absent changed circumstances. *Varela,* 481 F.3d at 935-36 (citing *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir.1995); *Belford*, 975 F.2d at 313).

Mr. Johnson's claims for ineffective assistance of counsel during trial and at the sentencing phase do not rely on evidence outside the record established at the time of his sentencings, and Mr. Johnson could have pursued these claims on direct appeal. Additionally, he has offered no explanation for his failure to bring these claims on direct appeal other than a statement that his counsel did not appeal the issues. As such, his claims are procedurally barred. *McCleese v. United States,* 75 F.3d 1174, 1177 (7th Cir. 1996). Aside from any procedural default, Mr. Johnson's claims fail on the merits.

**Independent Findings as to Proper Drug Quantity**

The record does not support Mr. Johnson's contention that his attorney failed to object to the

6

proper drug quantity attributable to Mr. Johnson, nor does it support his assertion that the Court failed to make independent findings as to the drug quantity (to which Mr. Johnson claims his attorney should have objected). On December 13, 2006, Mr. Soliday filed a Sentencing Memorandum on behalf of Mr. Johnson, arguing: "This Court should stand by its most recent recalculation of the offense level being distribution of 50 grams of crack cocaine, as the jury so found . . . Wiley Johnson did not live in Gary, Indiana during the full time of the conspiracy, as he lived in Chicago, Illinois and also out of state with his girlfriend. His girlfriend testified to those facts at the trial. While there may have been unreliable testimony from co-defendants and cooperating witnesses, there was no specific testimony as to exactly how much crack cocaine Wiley Johnson sold during the conspiracy time. Besides the conspiracy, Johnson was only found guilty of selling crack cocaine of a net weight of .15 grams. This is a very small amount of cocaine (as two tic tacs weigh approximately .15 grams)." *See*, Doc. No. 386, p. 2.

The Court considered Mr. Soliday's objection as to the inclusion of certain conduct attributable to Mr. Johnson, and considered Mr. Soliday's argument as to the applicable amount of drugs; yet, the Court declined to rule in Mr. Johnson's favor. Instead, this Court determined that the relevant conduct established in the record, made more than 1.5 kilograms of crack cocaine attributable to Mr. Johnson.

It cannot be said, as Mr. Johnson argues, that Mr. Soliday failed to argue the applicable drug quantity, when in fact Mr. Soliday did so. Furthermore, as detailed above, this Court made specific and extensive independent factual findings regarding the amount of drugs attributable to Mr. Johnson, and therefore, Mr. Soliday was not ineffective for suggesting otherwise.

**Trial Testimony**

Mr. Johnson argues that during trial, his attorney failed to "properly" object to the testimony provided by the Lab Technician, Martinovich, regarding the nature of the substance (drugs). Specifically, Mr. Johnson states that his attorney should have objected to the testimony as "only an opinion, not based on personal knowledge . . .[to show] that her testimony was hearsay and inadmissable." (Doc. No. 517-2, p. 6). The trial transcript reveals that Mr. Johnson's attorney indeed objected to Martinovich's opinion testimony providing that the lab results revealed cocaine base. Mr. Soliday specifically argued that the testimony amounted to "hearsay" and lacked a foundation. *Id*. at. p. 12 (citing Trial Transcript, Vol. 4, p. 204). Over counsel's objection, the Court allowed the witness to provide opinion testimony that the substance contained cocaine base.

As such, Mr. Soliday did exactly what Mr. Johnson now argues he failed to do— he objected to the testimony based on hearsay. It was this Court's decision to allow the testimony in, over objection. Therefore, Mr. Soliday was not ineffective for failing to properly object to the same, when he did so.

**Criminal History Calculation**

Mr. Johnson argues that his attorney was ineffective for failing to object at sentencing to the presentence report's inclusion of pending criminal charges which were later dismissed. The government's response misses the mark in discussing the *admissibility* of the prior criminal charge during *trial*, as opposed to the *impact* of criminal charges/convictions upon Mr. Johnson's criminal history category at *sentencing*.

At any rate, this issue is not properly raised for the first time in a § 2255 Motion, and that is enough to dismiss the contention. Furthermore, misapplication of the Guidelines does not fall within

any of the categories for § 2255 relief, and therefore § 2255 cannot provide Mr. Johnson relief in this case. *See Scott v. United States*, 997 F.2d 340, 340-41 (7th Cir. 1993). However, even considering the merits of the claim, the outcome is no different.

When Mr. Johnson was first sentenced on November 6, 2003, this Court found that Mr. Johnson had 3 criminal history points based on 3 prior convictions as shown in the presentence report and indicated in the sentencing memorandum. Specifically, Mr. Johnson received the following criminal history points: (1) 1 criminal history point for a June 8, 1995 charge for visiting a common nuisance in Lake County, Indiana (Circuit Court Dkt. 45D08-9507-CM-09401) wherein he was found guilty on February 12, 1997 and placed on probation— the case was "dismissed satisfactorily" on October 1, 1997 per the presentence report; (2) 1 criminal history point for a September 27, 1997 charge for resisting law enforcement in Gary, Indiana (City Court Dkt. 45H03-9709-CM-3524) wherein he was found guilty and sentenced to 30 days in jail; and (3) 1 criminal history point for an October 15, 1998 charge of driving while suspended in Porter County, Indiana (Court Dkt. 64D06-9810-CM-1564) wherein he pled guilty with a plea agreement on October 17, 2001 and was given community service and placed on probation (and then on June 26, 2002, the presentence report indicates he failed to comply to the conditions and a warrant issued). In addition, Mr. Johnson received 2 criminal history points pursuant to U.S.S.G. § 4A1.1(d) because he committed the offense to which he was convicted for in this case, while he was on probation in Lake County, Indiana.

As stated, Mr. Johnson argues that certain state cases against him were dismissed, but yet, were erroneously used to increase his criminal history points and category at sentencing. In support of his position, Mr. Johnson directs this Court's attention to trial testimony wherein his attorney

9

discussed the dismissal of the June 8, 1995 common nuisance charge, and Mr. Johnson supplies the Court with Porter County Court documents revealing the dismissal of cases 64D06-9810-CM-1564 and 64D04-0108-CM-6274. However, even considering this evidence, Mr. Johnson's argument is flawed and fails to provide a basis for relief.

While it is true that Mr. Johnson's 1995 nuisance charge was dismissed, he was still convicted of the offense and thereafter it was "dismissed satisfactorily" when he served his probation term. The criminal history point applied was proper under U.S.S.G. 4A1.1(c), due to his conviction. Furthermore, case 64D04-0108-CM-6274 (due to an August 1, 2001 arrest for criminal recklessness), which was dismissed, did not result in the application of any criminal history points, and therefore did not affect Mr. Johnson's sentence. And finally, Mr. Johnson pled guilty to the driving while suspended charge (case 64D06-9810-CM-1564), to which one criminal history point was properly applied under U.S.S.G. 4A1.2(c)(1)(A) due to the conviction. Thereafter, the prosecutor removed the detainer warrant issued when Mr. Johnson failed to comply with conditions, and closed the case. No convictions were ever voided, for which Mr. Johnson received criminal history points.

In all, the presentence report correctly reflected Mr. Johnson's criminal history category as III, on account of his 5 criminal history points, and his sentencing Guideline range was 360 months to life imprisonment. Considering the factors enumerated in 18 U.S.C. § 3553, this Court found that a sentence of 360 months was appropriate, and explicitly stated that the Court refused to exercise its discretion in imposing a non-guideline sentence. The sentence imposed, 360 months, was sufficient

but not greater than necessary to satisfy the factors in 18 U.S.C. § 3553.[3] The sentence was affirmed by the Seventh Circuit. Because Mr. Johnson's state cases which resulted in criminal history points, were accurately considered and applied by the Court during sentencing, Mr. Johnson's attorney had no reason to object— and thus, was not ineffective for not objecting.

Based on the foregoing, all of Mr. Johnson's claims fail because he does not demonstrate ineffective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668 (1984). Under *Strickland,* a defendant must show that counsel's performance fell below the objective standard of reasonableness and outside the wide range of professionally competent assistance. *See Barker v. United States,* 7 F.3d 629, 633 (7th Cir.1993) (quoting *Strickland,* 466 U.S. at 690). It cannot be said that, but for counsel's alleged errors, the result of the proceedings would have been different. In fact, the result would have been the same.

If petitioner appeals, for the reasons stated herein, none of the issues presented to this Court make a substantial showing of the denial of a constitutional right, or present questions that are debatable among jurists of reason, thus, no certificate of appealability is to issue. *Stuart v. Gagnon*, 837 F.2d 289 (7th Cir. 1987). As also explained in this order, any appeal on this matter is not taken in good faith, and no request to Proceed on Appeal *In Forma Pauperis* will be granted. *See* 28 U.S.C. § 1915(a)(3). The Court advises the Petitioner that pursuant to Fed.R.App.P. 22(b), where the district judge denies a certificate of appealability, the applicant may request a circuit judge to issue

---

3   While Mr. Johnson's offense level was subsequently lowed to an offense level of 38 (due to the retroactive Guideline amendment) a sentence of 292 months' imprisonment was imposed on April 8, 2008 (based on criminal history category of III which produced a sentencing range of 292-365 months). The 292 month sentence complies with this Court's original declaration that a guideline sentence was to be imposed, as it was sufficient but not greater than necessary to satisfy the statutory requirements.

the certificate, and pursuant to Fed.R.App.P. 24, where the district judge denies leave to proceed *In Forma Pauperis*, he must refile the motion in the United States Court of Appeals.

**IT IS SO ORDERED**.

**DATED: March 30, 2009.**

                                               /s/ ALLEN SHARP
                                   **ALLEN SHARP, JUDGE**
                                   **UNITED STATES DISTRICT COURT**